IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TONY TORRES, | ) | |
| | ) | |
| Plaintiff, | ) | 4:11CV3000 |
| | ) | |
| V. | ) | |
| | ) | |
| WAL-MART STORES, INC., | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") motion for summary judgment, (filing no. 47). For the reasons set forth below, the motion is granted.

BACKGROUND

Plaintiff Tony Torres ("Torres") asserts Wal-Mart discriminated against him in violation of the Americans with Disabilities Act (the "ADA"), and that he was unlawfully terminated due to his national origin under the Civil Rights Act of 1991. Filing No. 1, ¶1.

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). The non-moving party opposing the motion must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). The response must "address each numbered paragraph in the movant's statement" of facts and must, "in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in

the movant's statement will be deemed admitted unless controverted by the opposing party's response."  Id.

Defendants submitted a statement of material facts and evidence that was properly authenticated by affidavit or deposition testimony.  Plaintiff addressed the Defendants' statement of facts paragraph by paragraph and objected to only two of the paragraphs.[1]  Filing No. 56.

## STATEMENT OF UNDISPUTED FACTS

Based on the parties' submission, the following are considered undisputed for the purposes of defendant's motion for summary judgment.

1.    Torres is a Hispanic male residing in the State of Nebraska.  Filing No. 1, ¶4.

---

[1]  Plaintiff objected to Wal-Mart's assertion that it does not create "light-duty" jobs.  He identified paragraph no. 61 in the Wal-Mart's Brief in Support of its Summary Judgment as the offending paragraph.  However, paragraph no. 60 in Wal-Mart's brief seems more pertinent to Plaintiff's objection as that paragraph states: "There is no light-duty "sweeper" position or "lighter aisles" position at the DC."  Filing No. 48, ¶60.  In support of its objection, Torres offers deposition testimony from an unrelated case which has not been properly submitted into evidence or authenticated for the purposes of this case and cannot be used to properly refute one of the movant's factual assertions.  See NECivR. 56.1(b)(1).  This principal is equally true for the additional factual assertion, made by Torres, that Mark Oettinger was not aware of any burden placed on Wal-Mart by having Torres on extended unpaid leave.  Filing No. 56, ¶80.

2

2.      Wal-Mart Stores, Inc. is a foreign corporation headquartered in Bentonville, Arkansas with a Distribution Center ("DC") in North Platte, Lincoln County, Nebraska.  Filing No. 1, ¶5; Filing No. 49-4, (Declaration of Mark Oettinger, ¶2 ).

3.      The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343; both diversity and federal question jurisdiction exist.   Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because Wal-Mart conducts business in Nebraska and Torres was employed there.  Filing No. 1, ¶2.

4.      In 2007, Torres applied for an Orderfiller position at the DC, and he accepted the position on July 23, 2007.  Filing No. 1, ¶¶5-6; Filing No. 49-5, (Depo. of Tony Torres, 23:19-24:12); Filing No. 49-2.

5.      General  Manager Mark Oettinger ("Oettinger") assisted  with the decision to hire Torres. Filing No. 49-5, (Depo. of Tony Torres, 27:10-25).

6.      Torres was employed   at-will   by Wal-Mart.  Filing No. 49-2; Filing No. 49-5 (Depo. of Tony Torres, 24:23-26:10; 27:3-6).

7.      As an Orderfiller, Torres was required to physically load grocery inventory onto pallets for shipment to Wal-Mart stores in the region.  Filing No. 49-5 ( Depo. of Tony Torres, 173:4-11).

8.      The essential functions of Torres' Orderfiller position are outlined in Torres' signed job description as follows:

- Fine motor skills and coordination, grasping, turning and manipulating small objects and power equipment.
- Accurately and efficiently pulling items from their correct location, which will include bending, stooping, and reaching.
- Continuously standing, stooping, bending, kneeling, reaching, pushing/pulling, handling and moving freight weighting up to 80 pounds without assistance involving lifting:

  - Regularly up to 50 pounds;
  - Frequently up to 65 pounds;
  - Occasionally up to 80 pounds;

Filing No. 49-3, pp. 10-11.

9.  Torres confirmed the physical requirements of the Orderfiller position required him to bend and lift up to 80 pounds. Filing No. 49-5, (Depo. of Tony Torres 173:4-23).

10.  When Torres signed his job description, he indicated that he had the "ability to perform the essential functions of this position either with or without a reasonable accommodation." Filing No. 49-5, (Depo. of Tony Torres 54:10-23).

11.  At the outset of his employment, Torres completed an orientation and training, during which he reviewed Wal-Mart's policies. Filing No. 49-2; Filing No. 49-5, (Depo. of Tony Torres 28:1-6; 28:14-29:2; 29:3-30:9; 30:14-31:6; 32:6-19; 32:20-33:4 and 33:5-20).

12.  Wal-Mart trained Torres on the following policies: Leave of Absence ("LOA"), Open Door, Accommodation in Employment, Discrimination & Harassment, and Associate Personal Injury. Filing No. 49-2, pp. 4-23.

13.  Wal-Mart's Accommodation in Employment Policy provides:

4

**Policy**

At Wal-Mart, every associate and job applicant has full access to equal employment opportunities. Wal-Mart will provide associates who have a disability with reasonable accommodations to enable them to perform the essential functions of their jobs, seek new jobs within the company, and enjoy the benefits of employment....

If you have a medical condition that is not a disability, but which prevents you from performing your job, including pregnancy, you may be eligible for a job aid or environmental adjustment under this policy, a leave of absence under the Leave of Absence Policy (PD-24), or you also may request transfer to another open position under the Associate Transfer Policy (PD-05). Logistics associates may request transfer under the Associate Job Transfer Program 115-1.5

. . .

**Eligibility for a Reasonable Accommodation due to a Disability**

You may be eligible for a reasonable accommodation if you are qualified for the job you hold or a job you seek but, because of a disability, you need assistance to apply for a new job, or to perform the essential functions of a job.
. . .
*Qualified* means you have the skills, ability, knowledge, certification, and experience necessary to do a job, and can perform the essential functions of a job either with or without reasonable accommodation.

*Reasonable accommodation* means a change in policy, practices, or the environment which enable an associate with a disability to perform the essential functions of his/her job without creating an undue hardship for the company.
. . .
Reasonable accommodations do not include:
- Reassignment to a job that is not vacant;
- Creating a new job;
- Eliminating essential functions of a job;
- Providing assistive devices needed outside of the workplace (such as eyeglasses or hearing aids); and
- Providing an accommodation that imposes an undue hardship on the company.

5

Filing No. 49-2, pp. 26-8.[2]

14.  Wal-Mart's Accommodation in Employment Policy emphasizes that "[i]t is important that you engage in an interactive process and provide information that will assist in understanding your abilities." The Policy instructs associates to complete a "Request for Accommodation Packet" to facilitate the accommodation process. Filing No. 49-2, p. 28.

15.  Torres reviewed Wal-Mart's Accommodation in Employment Policy on the DC's bulletin board. Filing No. 49-5, (Depo. of Tony Torres 37:7-11; 37:24-38:1; 38:7-14).

16.  Wal-Mart's Personal Leave of Absence Policy provides:

**Policy**

Wal-Mart provides Personal Leave to eligible associates who do not qualify for leave under the FMLA or related laws, but need time away from work due to special circumstances, as described below. Except as detailed below, associates on Personal Leave are not guaranteed any position, including their previous position, upon return.

. . .

**Discretionary Leave - Job Not Protected**

---

[2]  Plaintiff has objected to this paragraph to the extent it calls for a legal conclusion as to what constitutes a reasonable accommodation. The paragraph is adopted as an undisputed fact only to the extent it provides an accurate representation of Wal-Mart's Accommodation in Employment Policy.

If you have exhausted your FMLA leave or wish to take Personal Leave beyond 12 weeks, the decision whether leave will be granted will be made after considering factors such as the impact on Wal-Mart's business, your overall job performance, the necessity for such leave, and the amount of leave already taken.

You may take Personal Leave for up to 12 months for the following reasons, except as specified below, if your Manager determines that business requirements will allow the leave.  You are not guaranteed any position, including your previous position, upon return.  The Manager will consider factors such as the impact on Wal-Mart's business, your overall job performance, the necessity for such leave, and the amount of other leave already taken.

. . .

**Transfer**  Associates seeking to transfer may be placed on a 30-day unpaid Leave of Absence after leaving their original position to find another position.

. . .

**Reduced Schedule or Intermittent Leave**

Personal Leave is not available on an intermittent or reduced schedule basis. Associates with disabilities should seek reasonable accommodation through the ADA process regarding a reduced schedule or other time off.

. . .

**Extending Personal Leave**

If you need to extend your Personal Leave beyond what you initially requested, you must request an extension as soon as possible by submitting another Request for Leave of Absence Form to Human Resources.

. . .

If you do not notify Wal-Mart that you need to extend your Personal Leave and do not report to work, you may be deemed to have voluntarily terminated your employment from Wal-Mart, except where prohibited by law.

Filing No. 49-2, p. 16-23.

17.     Torres believes that he may have reviewed the LOA policy during his orientation and believes the policies were available to review on Wal-Mart's computer system.   Filing No. 49-5, (Depo. of Tony Torres 33:25-37:4-17). Every a

7

Associate[3] has personal access to Wal-Mart's policies and procedures on the computer database. Filing No. 49-6, ( Depo. of Mark Oettinger, 28:7-29:106).

18.   Torres was aware of Wal-Mart's Open Door Policy and understood that it permitted him to speak with management about concerns or discipline. Filing No. 49-5, (Depo. of Tony Torres 49:7-12).

19.   Torres received a copy of Wal-Mart's Discrimination and Harassment Policy. That policy prohibits discrimination based on disability or race, and encourages Associates to report any harassment.  Filing No. 49-5, (Depo. of Tony Torres 37:7-11; 37:24-38:1; 38:7-14); Filing No. 49-3, pp. 1-4.

20.   Torres understood that it was a term and condition of his employment to comply with Wal-Mart's policies. Filing No. 49-5, (Depo. of Tony Torres 53:16-19).

21.   During a meeting with Mark Oettinger on February 23, 2009, Torres stated that he had a disability and requested that Wal-Mart accommodate him. Filing No. 49-5, (Depo. of Tony Torres 86:21-25); Filing No. 49-4, (Oettinger Decl. ¶¶ 9-10).

22.   Oettinger provided Torres with an ADA request for accommodation packet and walked him through the procedures for requesting an accommodation. Filing No. 49-5, (Depo. of Tony Torres 87:1-4).

23.   On April 13, 2009, Supervisor Kaman Dailey questioned Torres about why Torres took an extended break during the work day. Filing No. 49-3, p. 12; Filing No. 49-5,

---

[3] Wal-Mart refers to employees at the DC as "Associates."

8

(Depo. of Tony Torres 60:7-61:13). Torres responded by cursing at Dailey several times. Filing No. 49-3, p. 12. Use of profanity is prohibited at Wal-Mart's facilities and Torres was confronted for his conduct. A Performance Tracking form was completed documenting the fact Torres was told use of profanity was unacceptable. Filing No. 49-5, (Depo. of Tony Torres 61:1-9; 39:22-40:8).

24.     On or about June 21, 2009, Torres refused to fill orders in the Meat and Produce area. Filing No. 49-5, (Depo. of Tony Torres 71:6-22); Filing No. 49-4, (Oettinger Decl. ¶11). Torres claimed that he could not work in the Meat and Produce area because he thought it would hurt his back. Torres had not yet submitted ADA accommodation request forms to the DC at the time he refused to fill orders in the Meat and Produce area. Filing No. 49-5, (Depo. of Tony Torres 71:6-9; 72:1-9).

25.     Oettinger informed Torres that if he was refusing to work, he would be held accountable for time missed, but Torres opted to leave the facility. Filing No. 49-4, (Oettinger Decl. ¶11). The next day, Oettinger met with Torres to discuss his refusal to work, and Torres claimed that other Associates did not have to go to other areas when they did not want to. Filing No. 49-4, (Oettinger Decl. ¶12); Filing No. 49-5, (Depo. of Tony Torres 70:1-7). After talking with Torres, Oettinger concluded that he would not count Torres' absence against him but that going forward the requirement to work where directed would have to be more consistently applied to all Associates. Torres did not receive an attendance occurrence or discipline for leaving the DC during his shift on June 21, 2009. Filing No. 49-4, (Oettinger Decl. ¶12).

26.     Torres submitted an ADA reasonable accommodation request dated July 13, 2009, and a leave of absence ("LOA") request. Filing No. 49-6, (Depo. of Mark Oettinger

9

60:22-25); Filing No. 51-1, p. 2-4; Filing No. 49-5, (Depo. of Tony Torres 99:21-100:14 & 100:15-101:13).

27.   On his ADA Request for Accommodation Form, Torres indicated his impairment was "disorders of Back" and that he requested the accommodation of "following doctor's orders with my physical impairments." Filing No. 51-1, p. 2.  Torres did not submit the Medical Certification that accompanied his ADA request form or indicate what the "doctor's orders" were.  Filing No. 69-1, (Declaration of Dave Orton, ¶5) ; Filing No. 51-1, p. 4.

28.   On his LOA form which was back-dated to June 25, 2009, he requested leave from June 22, 2009 to September 27, 2009, for his own serious health condition.  Filing No. 51-1, pp. 3-4.  In support of his LOA request, Torres submitted a Health Care Provider Certification from Dr. Jeffrey Kleiner.  Filing No. 49-5, (Depo. of Tony Torres 78:8-20 & 180:11-19); Filing No. 51-1, pp 8-9.

29.   On the LOA certification, Dr. Kleiner indicated that Torres aggravated a lower back injury that he first suffered while employed with Union Pacific. Filing No. 51-1, pp 8-9.   Dr. Kleiner indicated Torres was unable to perform some of the essential functions of his position as he had a 35-pound lifting restriction and was to avoid twisting and bending. Filing No. 51-1, pp 8-9.

30.   Dr. Kleiner explained that Torres' condition could cause episodic flare-ups, that he would "be an ineffective worker during flare-ups" and thus "would be best served with1d/wk of work."  Filing No. 51-1, pp 8-9.

31.   Torres also filed an unemployment application with the Nebraska Department of Labor on July 2, 2009, more than ten days before submitting his ADA or LOA paperwork to Wal-Mart. Filing No. 51-1, pp. 5-7; Filing No. 49-5, (Depo. of Tony Torres 170:6-17). On his unemployment application, Torres represented that he had a disability limiting him to one day of work per week. Filing No. 51-1.

32.   On July 17, 2009, Personnel Department Manager Dave Orton ("Orton") reviewed Torres' LOA request and found it to be incomplete, so Orton arranged a meeting to speak with Torres about his request. Filing No. 69-1, (Orton Decl. ¶6).

33.   Torres was not eligible for FMLA leave because he had not worked 1250 hours in the past 12 months. He had worked 1205.47. Filing No.69-1, (Orton Decl. ¶6).

34.   On July 17, 2009, Oettinger and Orton met with Torres to discuss both his LOA and ADA requests. Filing No. 69-1, (Orton Decl. ¶7). Orton asked Torres to describe his condition, but Torres would only say that they could read what the doctor had written. Orton then asked Torres what job he could perform given his restrictions. Torres refused to answer and asked if they were denying his ADA claim. Orton told Torres that they were not denying his claim but that he would need to look for other positions to transfer to which met his restrictions. Filing No. 69-1, (Orton Decl. ¶7).

35.   During the meeting on July 17, 2009, Orton told Torres that Wal-Mart would honor his LOA request for three months to give him time to look for other positions that met his restrictions. Filing No. 69-1, (Orton Decl.¶8). Orton approved Torres' LOA request granting a Personal LOA. Filing No. 69-1, (Orton Decl.¶8). A LOA is not classified as "job-protected" leave. Filing No. 69-1, (Orton Decl.¶8).

11

36.   On August 10, 2009, Torres supplemented his ADA request with the Medical Certification form from his physician. Filing No. 51-1, p. 1; Filing No. 49-5, (Depo. of Tony Torres 99:6-20). On the certification, Dr. Kleiner indicated that Torres' diagnosis was "nonspecific pain syndrome[,] fibromyalgia" and that the prognosis was "poor." Dr. Kleiner also checked the boxes indicating that Torres was affected in the major life activities of "bending, lifting, performing manual tasks, thinking, and concentrating." Dr. Kleiner indicated that Torres had "pain w/ bending/twisting," that "pain impairs concentration  w/ performing  manual tasks," and that "pain impairs thinking capacity."  Filing No. 51-1, p. 1.

37.   Having received  the Medical Certification form while Torres was still on his LOA, Wal-Mart determined that Torres could not remain in his current Orderfiller position given his limitations provided thus far by his physician.  Filing No. 69-1,  (Orton Decl. ¶9); Filing No. 49-3, p. 10-11.  Wal-Mart determined that the only reasonable accommodation available to Torres was reassignment, or a transfer to another position within his restrictions.  Filing No. 49-6,  (Depo. of Dave Orton, 86:1-16); Filing No. 69-1, (Orton Decl. ¶9).

38.   Orton completed a new LOA form granting Torres additional Personal LOA from August 11, 2009 to November 11, 2009 to provide Torres with additional time to find another position that would meet his job restrictions. Filing No. 26, pp. 14-15; Filing No. 69-1, (Orton Decl. ¶10).

39.   In a letter dated August  13, 2009, Orton informed Torres that Wal-Mart concluded that reassignment was the appropriate accommodation for him. Filing No. 49-3, p. 13; Filing No. 49-5, (Depo. of Tony Torres 101:14-23). Orton explained that Torres was placed on an additional  LOA (a "reassignment LOA")  for up to 90

days, or until November 11, 2009, in order to look into and apply to transfer to open positions that he could perform given his medical restrictions. Orton also provided Torres with a phone number to call for information about the DC's job openings each week. Filing No. 49-3, p. 13.

40. Torres contacted the DC for a number of weeks to look for open positions. Filing No. 49-5, (Depo. of Tony Torres 46:6-7).

41. In October of 2009, Torres requested, and was granted, another extension of his personal LOA, which was scheduled to expire on November 11, 2009. Filing No. 49-3, p. 17; Filing No. 69-1, (Orton Decl. ¶11).

42. In a letter dated November 25, 2009, Orton advised Torres that, as he had discussed with him over the telephone on November 17, 2009, his LOA had been extended again to allow him additional time to apply to transfer to open positions that met his restrictions and that it would expire on December 25, 2009. Filing No. 49-3, p. 20; Filing No. 69-1, (Orton Decl. ¶11). Orton explained that this "reassignment LOA" was the appropriate reasonable accommodation and asked that Torres continue to look for open vacant positions that he could perform that met his restrictions. Orton again provided the phone number for the person that Torres could call each week to check on current openings. Filing No. 49-3, p. 20.

43. Other than bidding on one Orderfiller position, Torres applied for no other positions during his entire personal LOA. Filing No. 49-5, (Depo. of Tony Torres 46:3-19; 117:20-23; 143:9-11); Filing No. 49-3, pp. 10-11.

44. Torres' LOA expired on December 25, 2009. Filing No. 69-1, (Orton Decl. ¶11).

13

45.     On January 6, 2010, Orton contacted Torres to inform him that his LOA had expired. Filing No. 49-5, (Depo. of Tony Torres 47:2-6); Filing No. 69-1, (Orton Decl.¶12). During the conversation, Orton asked Torres to provide input as to any position that he felt he could perform, but Torres refused to answer.  Filing No. 69-1,  (Orton Decl. ¶12).

46.     On January 6, 2010, Wal-Mart terminated Torres' employment for failing to return from his LOA or obtain a transfer through the job transfer program.  Filing No. 49-3, p. 16.  Oettinger assisted in the termination decision.  Filing No. 49-6,  (Depo. of Mark Oettinger 21:4-16).

47.     Torres understood his employment was terminated based on Wal-Mart's LOA Policy. Filing No. 49-5, (Depo. of Tony Torres 48:7-49:5).  Torres did not attempt to speak with management about his termination under the Open Door Policy.  Filing No. 49-5, (Depo. of Tony Torres 49:13-17).

48.     Other than his belief that Wal-Mart's LOA Policy prevented him from applying for an open position, Torres was unable to state any reason to refute Wal-Mart's stated reason for terminating his employment - his failure to return from LOA.  Filing No. 49-5, (Depo. of Tony Torres 41:1-20 & 130:12-17).

49.     Torres' back impairment prevented him from meeting the attendance requirement of his job.  Filing No. 49-5, (Depo. of Tony Torres 93:13-16).

50.     Torres' Complaint includes all of his claims against Wal-Mart.  Filing No. 49-5, (Depo. of Tony Torres 135:8-9; 139:13-25).

14

51.   Torres' only disability is a "back injury." Filing No. 1, ¶7.  Torres testified that his back became impaired in 2000 when he was injured while working for Union Pacific. Filing No. 49-5, (Depo. of Tony Torres 75:13-20; 76:18-77:20).

52.   Torres is physically unable to perform the Orderfiller job.  Filing No. 49-5, (Depo. of Tony Torres 143:9-11).

53.   Torres' only stated reason for believing Wal-Mart discriminated against him because of his disability is that "[he] asked Mark Oettinger to put [him] on lighter aisles," and the Oettinger responded that, "I cannot do that because it shows favoritism." Filing No. 49-5, (Depo. of Tony Torres 97:18-98:2).  Torres cannot point to any other employment actions taken against him because of his alleged disability.  Filing No. 49-5, (Depo. of Tony Torres 121:23- 122:7).

54.   Torres could identify no medical restrictions relating to his alleged back impairment outside of those outlined in his LOA application and his ADA accommodation request. Filing No. 49-5, (Depo. of Tony Torres 78:21-79:14); Filing No. 51-1, pp. 1 & 8-9.

55.   Torres work restriction of "one day of work" per week was a permanent restriction. Filing No. 49-5, (Depo. of Tony Torres 79:6-22).

56.   The DC does not have any jobs that are performed just one day per week, and Torres admitted that he did not know of any other DC employees who were permitted to work only one day per week.  Filing No. 49-5, (Depo. of Tony Torres 124:6-8); Filing No. 49-4, (Oettinger Decl.  ¶15).

57.   Torres asserts that he also asked Wal-Mart to accommodate him by giving him assignments in his Orderfiller position in the "lighter aisles" and/or giving him the "sweeper job." Filing No. 49-5, (Depo. of Tony Torres 114:12-115:21).   Torres can identify no documents or records of his alleged verbal requests.   Filing No. 49-5, (Depo. of Tony Torres 115:22-116:25; 118:11-15).

58.    Wal-Mart does not offer a separate light-duty "sweeper" position or "lighter aisles" position at the DC.   Filing No. 49-4, (Oettinger Decl.  ¶16).

59.   Torres requested no other accommodations.   Filing No. 49-5, (Depo. of Tony Torres 118:16-19).

60.   The DC has terminated at least seven other Associates in the past two years for the same reason as Torres, and these individuals are Caucasian and have no known disabilities.   Filing No. 49-4, (Oettinger Decl. ¶14).

61.   Wal-Mart provides light duty positions to individuals with "workers' compensation injuries" incurred at Wal-Mart. Filing No. 49-3, pp. 5-7; Filing No. 49-5, (Depo. of Tony Torres 38:18-24).

62.   Torres claims a white Lift Driver, Peggy C., was not disciplined for refusing to work in a specific area of the DC due to her diabetes. Filing No. 49-5, (Depo. of Tony Torres 69:19-71:18).   Peggy C. did not hold an Orderfiller position.   Filing No. 49-5, (Depo. of Tony Torres 70:15-16).

63.    Torres also refused to work in a specific area of the DC due to his alleged disability. Although, Oettinger spoke to Torres about the matter he was not disciplined for his refusal to work.  Filing No. 49-4, (Oettinger Decl.  ¶12).

64.    Torres  also initially claimed  that a white Orderfiller, Corey P., allegedly received light duty work after suffering an off-the-job injury to his arm.  Filing No. 49-5, (Depo. of Tony Torres 63:6-24; 120:1-10; 63:9-24; 64:17-21); Filing No. 49-6, (Depo. of Kaman Dailey, 45:23-24 13).  Corey P. did not request nor receive a light duty assignment.  Filing No. 69-1, (Orton Decl. ¶13); Filing No. 49-6, (Depo. of Karman Dailey. 45:25; 46:1-2).

65.    These are the only light-duty assignment examples Torres could identify. Filing No. 1, ¶9;  Filing No. 49-5, (Depo. of Tony Torres 119:6-25).

66.    When  Torres  submitted  his  LOA  request  and ADA reasonable accommodation request in July of 2009, the DC had two Hispanic associates working in TAD light duty assignments due to workers compensation injuries - Juan R. and Dustin 0.  Filing No. 69-1, (Orton Decl. ¶14).

67.    According to Torres, during a shift on February 9, 2009, he was "asking about some pallets being moved" when his supervisor "came up in [his] face like he wanted to fight."  Filing No. 49-5, (Depo. of Tony Torres 62:12-63:1). Torres testified that he "got yelled at" when he attempted to report the incident to another supervisor and Mark Oettinger, so Torres said he was going home.  Filing No. 49-5, (Depo. of Tony Torres 62:15-21). Torres admits he did not state that he felt he was being discriminated against, but instead only said, "Boy, a lawyer would like to hear this." Filing No. 49-5, (Depo. of Tony Torres 65:3-23).

68.   Oettinger told Torres that his absence would not be excused but he could still leave. Torres became confrontational and asked if he was being fired.  Oettinger told him that  he  was not fired and that the  conversation was over until Torres  could  be more respectful.  Torres told Oettinger to fire him and said "you don't give a shit." Filing No. 49-6, (Depo. of Mark Oettinger 93:8-9); Filing No. 49-4, (Oettinger Decl. ¶8).

69.   Torres received an absence occurrence for leaving that day, so he initiated the Open Door Policy to discuss it with Oettinger thereafter.  During the meeting with Torres, Oettinger apologized that their conversation had made Torres so upset and overturned the attendance occurrence for February 9th so that it did not count against Torres. Filing No. 49-4, (Oettinger Decl.  ¶9).

70.   Torres is unable to identify any other incidents where he was allegedly subject to harassment based on his national origin.  Filing No. 49-5, (Depo. of Tony Torres 125:5-18).

71.   No other instances of  alleged national origin harassment occurred thereafter.  Filing No. 49-5, (Depo. of Tony Torres 127:6-8).

72.   Torres' final performance review, due on or about August 6, 2009, was classified as "good."  Filing No. 57-3.

ANALYSIS

A.  **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  See Dancy v. Hyster Co., 127 F.3d 649, 652-53 (8th Cir. 1997).  It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial.  See Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999) .

The moving party bears the burden of showing there are no genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)) (internal marks omitted).

B.   **Torres' Claims**

Torres' claims are brought under the ADA and the Civil Rights Act of 1991.  As set forth below, summary judgment is granted in favor of Wal-Mart on all claims.

1.   **ADA**.

19

To survive a motion for summary judgment on a claim under the ADA, the plaintiff can demonstrate unlawful discrimination through either direct or indirect evidence. Bearden v. Int'l Paper Co., 529 F.3d 828, 831 (8th Cir. 2008). Claims based on indirect evidence are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973.) See Lors v. Dean, 595 F.3d 831, 834 (8th Cir. 2010). To establish a prima facie case of disability discrimination, Torres must make a showing "that he was disabled within the meaning of the ADA, that he was qualified to perform the essential functions of his job, and that he suffered an adverse employment action because of his disability." Kosmicki v. Burlington Northern & Santa Fe. R. Co., 545 F.3d 649, 651 (8th Cir. 2008).

Under the ADA an individual is "qualified" if he or she can perform the essential functions of the job, with or without reasonable accommodation. Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1047-48 (8th Cir. 1999). An essential function "means the fundamental job duties of the employment position the individual with a disability holds or desires," but does not include "the marginal functions of the position." E.E.O.C. v. Wal-Mart Stores, Inc., 477 F.3d 561, 568 (8th Cir. 2007). The employer bears the burden of presenting evidence establishing what constitutes an essential function of the job. Maziarka v. Mills Fleet Farm, Inc., 245 F.3d 675, 680 (8th Cir. 2001). When assessing which job functions are essential, the employer may rely on its own judgment, written job descriptions used in advertising or interviewing applicants for the position, the amount of time necessary or spent to perform a job duty, the consequences of not requiring an employee to perform certain tasks, and the work experience of other employees in similar jobs. Moritz v. Frontier Airlines, Inc. 147 F.3d 784, 787 (8th Cir. 1998). The plaintiff then has the burden of showing a reasonable accommodation is possible. E.E.O.C., 477 F.3d at 569. The burden then shifts back to the employer to demonstrate it is unable to accommodate the employee. Id. A reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

20

In this case there is no evidence Torres could perform the position of "Orderfiller" either with or without a reasonable accommodation.  The job description for Orderfiller included the following "essential" job functions:

- Fine motor skills and coordination, grasping, turning and manipulating small objects and power equipment.

- Accurately and efficiently pulling items from their correct location, which will include bending, stooping, and reaching.

- Continuously   standing,   stooping,   bending,   kneeling, reaching, pushing/bulling, handling and moving freight weighting up to 80 pounds without assistance involving lifting:

  - Regularly up to 50 pounds;
  - Frequently up to 65 pounds;
  - Occasionally up to 80 pounds;

Filing No. 49-3, pp. 10-11.

Torres testified that the position required bending and lifting up to 80 pounds and has not offered any evidence to refute Wal-Mart's contention that  the job description fairly represents the essential functions of the Orderfiller job.  Filing No. 49-5, (Depo. of Torres 173:4-25).  Through the job description and by Torres' own testimony, Wal-Mart has met its burden of showing bending, stooping and handling loads up to 80 pounds are essential duties of the Orderfiller job.

It is undisputed that Torres cannot perform the essential functions of the job without accommodation.  Torres is on a "permanent" restriction of working one-day a week.  Torres has made no showing that the Orderfiller position could be performed one day a week.  Indeed, regular attendance is an essential part of any job.  Browning, 178 F.3d at 1048.  See Moore v. Payless Shoe Source, Inc., 187 F.3d 845, 848 (8th Cir. 1999)("An employee who is 'unable to work on a regular basis is unable to satisfy any of the functions of the job in question, much

21

less the essential ones.' "). Further, Torres was placed on a lifting restriction of 35 pounds. It is undisputed that Orderfillers must regularly lift 50 pounds and may have to lift up to 80 pounds. Accordingly, Torres cannot be an Orderfiller without accommodation.

Since he is unable to perform the essential functions of the Orderfiller position without reasonable accommodation, Torres "has the burden to show that one or more reasonable accommodations existed that would have allowed him to perform the essential functions of his job." Jelsma v. City of Sioux Falls, 744 F. Supp. 2d 997, 1009 (D.S.D. 2010). Although, his argument is not the model of clarity, Torres appears to argue he should have been kept on leave until another job became available that Torres could physically perform. Torres also suggests he should have been given "light duty" work until another job became available. Filing No. 56, pp. 4-5.

Torres assertion that an essentially indefinite leave of absence would have been a reasonable accommodation fails as a matter of law. Wal-Mart attempted to accommodate Torres by placing him on a several temporary leaves of absence and by providing him with the opportunity to transfer to a new position within Wal-Mart that met his work restrictions. See Brannon v. Luco Mop. Co., 521 F.3d 843, 849 (8th Cir.2008); see also Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1018-9 (8th Cir. 2000) (reassignment is one "component part of the overall reasonable accommodation duty"). The separate leaves of absence lasted from July 17, 2009 to December 25, 2009. During this time Torres was provided with information regarding other employment opportunities at the DC.

Torres either did not search for, or was unable to find, a job for which he was qualified. Wal-Mart was not required to extend Torres leave for an indefinite period of time, particularly when it was not clear what jobs Torres could perform. The only information before Wal-Mart was Dr. Kleiner's reports that noted Torres' lifting restrictions, his difficulty in bending, lifting and performing manual tasks, and that Torres should work only one day a week. When asked

what jobs Torres felt he could perform with his restrictions, Torres did not cooperate with Wal-Mart and referred Oettinger and Orton to the report from the Dr. Kleiner.  Filing No. 49-4, p. 4-5 (Orton Decl. ¶7).  Wal-Mart was not required to extend Orton's leave indefinitely on the nebulous hope that he would either physically improve someday or that a job meeting his severe  physical restrictions would become available .  See Brannon v. Luco Mop. Co., 521 F.3d 843, 849 (8th Cir. 2008).  Torres has provided no evidence to show any job at Wal-Mart could be found to accommodate his physical restrictions and allow him to work one-day a week. See Burchett v. Target Corp., 340 F.3d 510, 517 (8th Cir. 2003)("[T]he employee must also make a facial showing that reasonable accommodation is possible and that the accommodation will allow [him] to perform the essential functions of the job").

Likewise, Torres' assertion he should have been given "light duty" or placed on the "lighter aisles" also fails as a matter of law.  Torres has the burden of making a prima facie showing that such an accommodation is possible and would allow him to perform the essential functions of the job.  Id. at 517.  The only evidence Torres submits that indicates such positions were available is his deposition testimony in which he alleges he orally requested work on the "lighter aisles" and requested the "sweeper job."  Filing No. 49-5, (Depo. of Tony Torres 114:12-115-21).  Torres has since acknowledged that no such jobs exist at the DC.  Filing No. 48, ¶60 & Filing No. 56, ¶77.  Further, he has provided no evidence that restricting him to "light duty" would allow him to meet the essential functions of his job, including lifting over 35 pounds and attending work more than one day a week.  Torres does not suggest what "light duty" might entail or how it would enable him to attend work regularly.  Further, when Torres was asked to participate in the process of identifying work he could complete, he declined to do so.  In short, Torres has not met his burden of making a prima facie showing that the suggested "light duty" accommodation was possible or that it would allow him to fulfill the essential functions of his Orderfiller position.

23

2.      **Termination due to National Origin**.


Torres argues he was terminated because he is Hispanic.


To establish a prima facie case of racial discrimination, a plaintiff must show
that: (1) he was a member of a protected group; (2) he was meeting the
legitimate expectations of [his] employer; (3) he suffered an adverse employment
action; and (4) similarly situated employees who are not members of the
protected group were treated differently.  See Clark v. Runyon, 218 F.3d 915,
918 (8th Cir.2000). Specifically, under the final prong of this test, [Defendant]
bears the burden to demonstrate by a preponderance of the evidence that there
were individuals similarly situated in all respects to [him] who were treated
differently. Id. The individuals used as comparators "must have dealt with the
same supervisor, have been subject to the same standards, and engaged in the
same conduct without any mitigating or distinguishing circumstances." Id. Once
this prima facie case is established, the burden shifts to the employer to provide
a legitimate reason for the adverse employment action. See McDonnell Douglas
Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Then,
the burden shifts back to the employee to demonstrate that the reason articulated
by the employer was a pretext. See Id. at 804, 93 S.Ct. 1817.

Gilmore v. AT&T, 319 F.3d 1042, 1046 (8th Cir. 2003).


Torres has failed to make a prima facie case he was terminated due to his national origin.
As an initial matter, he cannot claim he was meeting Wal-Mart's expectations.  He did not
attempt to return to work after his leave of absence, nor was he actively seeking other jobs at
the DC for which he was qualified based on his physical limitations.  Indeed, as was discussed
in detail above, Torres simply could not perform the duties of an Orderfiller.


More significantly, he points to no similarly situated individuals who were treated more
favorably than he was treated.  Torres points to two potential examples, neither of which help
him make a prima facie case.  He asserts a worker, Peggy C., was excused from accepting a
work assignment in the Meat and Produce section due to her diabetes.  However, neither she
nor Torres were formally disciplined for declining to work in the Meat and Produce section.

24

Therefore the comparison is irrelevant for the purposes of determining if Torres experienced discrimination.   See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)(individuals are similarly situated when accused of the same conduct but disciplined in different ways).

Second, Torres asserted in his deposition that another employee, Corey P., was given "light duty" after he broke his arm outside of his job.  However, based on his statement of undisputed facts, Torres agrees that Corey P. did not, in fact, ask for or receive "light duty" work.  Even if he did, Torres has the burden of showing that Corey P.  "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Clark, 218 F.3d at 918.   Torres has provided no information other than the fact Corey P. was an Orderfiller.  This is not enough to make his prima facie case that he and Corey P. were similarly situated but were treated differently.

### 3.    Harassment Based on National Origin.

To assert a claim of hostile work environment (i.e. he was harassed based on his national origin) Torres must make a prima facie case that he was (1) a member of a protected class; (2) he was subject to unwelcome harassment based on his national origin; (3) a causal nexus existed between the harassment and membership in the protected group; and (4) the harassment affected a term, condition or privilege of employment.  Shaver v. Independent Stave Co., 350 F.3d 716, 720 (8th Cir. 2003).

Torres has provided no evidence he experienced unwelcome harassment based on his national origin.  Torres has failed to identify any specific incidents where a Wal-Mart employee or supervisor harassed him due to his Hispanic national origin.  The only event he specifically cites is when a supervisor "got in [his] face" and that he was "yelled" at by management. Filing

No. 49-5 (Depo. of Tony Torres 62:12-25).   Torres does not provide any indication his national origin played any role in that confrontation.   Torres does not mention a single other incident in which he was subject to unwelcome harassment based on his national origin. Accordingly, his claim of harassment fails as a matter of law.

IT IS ORDERED:

1)      Defendants' motion for summary judgment (filing no. 47) is granted.

2)      This case is dismissed in its entirety.

3)      Judgment shall be entered by separate document.

DATED this 1st day of May, 2012.

BY THE COURT:

*S/ Cheryl R. Zwart*

United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.